UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE PLANTE, C.J.S., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.: 13cv0310-GPC-KSC<br><br>**ORDER DISMISSING C.J.S. AS A PARTY AND GRANTING AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 73, 81] |

Plaintiffs Christine Plante ("Plaintiff") and C.J.S. (collectively "Plaintiffs") are proceeding pro se and in forma pauperis in a medical malpractice action filed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b); 2671-80. Before the Court is a Motion for Summary Judgment filed by Defendant United States of America (the "United States" or the "Government"). (ECF No. 73.) The Government contends that Plaintiff has failed to produce the required expert testimony in accordance with the Court's scheduling order to establish a breach of the standard of care or causation. The Government also moves to exclude Plaintiff's designated expert witness from testifying at trial and for the dismissal of Plaintiff C.J.S., a minor child, as a party. (*Id.*) Plaintiff filed a response on August 21, 2015. (Opp'n, ECF No. 79.) For the following reasons, the Court **DISMISSES**

the SAC as to C.J.S. for failure to comply with Federal Rule of Procedure 17, **GRANTS** the Government's motion for summary judgment as to Plaintiff Christine Plante, and **DENIES** the Government's motion for summary judgment as to Plaintiff C.J.S. The hearing scheduled for October 2, 2015 is hereby **VACATED**.

## FACTUAL BACKGROUND

Plaintiffs bring this medical malpractice action under the FTCA against the Government for injuries they allegedly suffered as a result of medical care received at the Vista Community Clinic ("VCC"). VCC is a community health clinic that receives federal funding from the Department of Health and Human Services ("HHS"). (Mot. Summ. J. at 2, ECF No. 73.) As part of its funding agreement, HHS has deemed the VCC clinic protected under the FTCA. (*Id.*)

## I. Care of Plaintiff

Plaintiff Plante was treated at VCC from May 2007 to May 2012. (Mot. Summ. J., Exh. C (Plante Dep.) 8:19; 9:11, ECF No. 73-3.) Dr. Michael MacMurry was her primary care physician at VCC from 2007 until May 2012. (*Id.* 9:6-11.) Plaintiff complained of various medical conditions while she was a patient at VCC, including a hand wound that would not heal (Second Am. Compl. ("SAC") at 2, ECF No. 45), blurry eyesight (Plante Dep. 20:14-17), mucus in her lungs (*id.* 21:4-6), ligament damage (*id.* 29:23-25), low blood volume (*id.* 30:1-5) and Raynaud's syndrome (*id.*).

Plaintiff identifies VCC employees Sylvia Almanza and Dr. Cynthia McKinney as providing negligent and inadequate medical treatment. Plaintiff alleges that Ms. Almanza "plotted to establish a denial that Ms. Plante suffers from low blood volume and catastrophic damages to soft tissues." (SAC at 1, ECF No. 45.) Specifically, Plaintiff asserts that Ms. Almanza was present during Plaintiff's appointment with Dr. McKinney on November 24, 2010 for "a hand wound that would not form a scab." (*Id.* at 2; *see* Plante Dep. 17:1-4, ECF No. 73-2.) At the appointment, Plaintiff suggested "low blood volume" could be the cause of her condition at the appointment, to which Ms. Almanza "shook her head" in denial. (SAC at 2, ECF No. 45.) Dr. McKinney prescribed Plaintiff

sulfamethoxazole (an antibiotic) for her hand wound. (*Id.* at 2-3; *see* Plante Dep. 17:1-11, ECF No. 73-2.) Plaintiff claims that Dr. McKinney negligently prescribed Plaintiff sulfamethoxazole because she accepted Ms. Almanza's opinion "without careful study of the plaintiff's blood—a necessary step in prescribing this antibiotic to a patient who may have blood problems." (SAC at 2-3, ECF No. 45.) Plaintiff alleges that the sulfamethoxazole she was prescribed is contributing to her "terminal case of methemoglobinemia" and other medical complications. (*Id.*) Plaintiff asserts that Ms. Almanza's "contributed significantly to her terminal case of methoglobinemia." (*Id.* at 2.)

Plaintiff also claims that Dr. McKinney called the Department of Social Services "on or after November 24, 2010" to ask a disability analyst to assess Plaintiff for mental disability. (*Id.* at 4.) Plaintiff complains that as a result of the call a disability analyst stripped away Plaintiff's protective doctor-authorized CalWorks disability. (*Id* at 4.)

Two weeks after her appointment with Dr. McKinney for her hand wound, Plaintiff attended an appointment with Dr. MacMurry for blurry vision. (Plante Dep. 20:14-18, 23-25, ECF No. 73-2.) At her appointment with Dr. MacMurry, Plaintiff did not discuss the sulfamethoxazole that Dr. McKinney had prescribed for her hand. (*Id.* 20:6-11.) Plaintiff alleges that Dr. McKinney interfered with the decision of her primary care physician and caused her to suffer a blood vessel obstruction. (SAC at 4.)

Plaintiff stopped going to VCC mid-May 2012. (*Id.* 9:9-11.) Plaintiff alleges that she received a letter on May 18, 2012 from Barbara Mannino, VCC CEO, stating that Plaintiff "expect[ed] too much of [VCC]." (*Id.* 10:7-19.)

**II.   Care of C.J.S.**

Plaintiff C.J.S. is Plaintiff's minor son. Plaintiff, on behalf of C.J.S., alleges that C.J.S. was injured as a result of the negligence of the medical staff at VCC. (*See* SAC at 4, ECF No. 45.)

//
//
//

## PROCEDURAL BACKGROUND

On February 7, 2013, Plaintiffs filed this medical malpractice action under the FTCA against the Government. (ECF No. 1.) The complaint has been amended twice, ultimately resulting in the current operative pleading, the SAC, filed November 13, 2013. (ECF No. 15.) On August 27, 2013, the Court held an Early Neural Evaluation Conference (ENE). (*See* ECF No. 27.) On October 10, 2014, the Court held a telephonic Case Management Conference. (*See* ECF No. 29.)

On October 30, 2013, the Court issued a scheduling order setting discovery deadlines and other pretrial proceedings. (ECF No. 30.) The order instructed the parties to designate their respective experts in writing by March 10, 2015, with the deadline for exchange of rebuttal experts on or before March 24, 2015, and all expert discovery to be completed on or before June 8, 2015. (*Id.* at ¶ 3, 5.) Plaintiff failed to designate an expert by March 10, 2015 and instead filed a belated motion on March 23, 2015 requesting an extension of expert-related deadlines.

On March 27, 2015, the Court granted Plaintiff's unopposed first request to extend the date for designation of expert witnesses from March 10, 2015 to April 10, 2015. (ECF No. 69 at 2.) The Court cautioned Plaintiff that "further extensions of the pretrial deadlines will not be granted absent a showing of extraordinary good cause." (*Id.*)

On April 9, 2015, Plaintiff filed a second motion requesting an extension of expert-related deadlines. (ECF No. 70.) Plaintiff stated that on April 7, 2015, she spoke with a Case Manager at the American Medical Forensics Specialists to help Plaintiff locate an expert witness and guardian ad litem for C.J.S. (*Id.* ¶ 4.) Plaintiff stated that the Case Manager sent Plaintiff an invoice for an expedited service fee but Plaintiff was unable to pay this fee by April 10, 2015, because she had not received a check that had been sent in the mail from Pennsylvania on April 8, 2015. (*Id.*) On April 13, 2014, the Court granted Plaintiff's second request and extended expert-related deadlines by approximately 30 days, reminding Plaintiff that "it is her responsibility to maintain compliance with the Court's deadlines and to prosecute her case in a timely manner." (ECF No. 71 at 2.) The Court

reset expert-related deadlines as follows: expert designations by May 8, 2015, exchange of rebuttal experts on or before May 22, 2015, exchange of expert reports on or before June 5, 2015, and exchange of rebuttal reports on or before June 19, 2015. (*Id.*)

On May 8, 2015, Plaintiffs designated Dr. James Alton Burks, Jr., M.D. as their expert witness "to offer his opinions regarding the standard of care, liability, causation, and damages issues in this case," including the "applicable standard of care provided by physicians and nurse-practitioners in a clinical setting." (Mot. Summ. J., Exh. A (Plaintiffs' Expert Witness Designation) at 2, ECF No. 73-2.) Plaintiff stated that Dr. Burks' written expert report "will be produced in accordance with the Court's scheduling order." (*Id.*) On June 5, 2015, the Government provided Plaintiffs with its expert witness report. (*See* Mot. Summ. J., Exh. B (Government's Expert Witness Report), ECF No. 73-2.) To date, Plaintiffs have not provided their expert report. (Mot. Summ. J., Decl. of Chu ¶ 2, ECF No. 73-3.)

On July 6, 2015, the Government filed the instant motion for summary judgment. (ECF No. 73.) The Government argues that without expert testimony establishing medical negligence, Plaintiff as a matter of law cannot meet her burden of proof at trial. (Mot. Summ. J. at 1, ECF No. 73.) The Government also moves to exclude Plaintiff's designated expert witness from testifying at trial and to dismiss C.J.S. from the case because Plaintiff, proceeding pro se, does not have standing to pursue claims on behalf of her minor son. (*Id.*)

On July 16, 2015, Plaintiff filed a third motion requesting extension of expert-related deadlines. (ECF No. 77.) Plaintiff identified Dr. James Alton Burks as Plaintiffs' expert witness but stated that Dr. Burks has become unresponsive (an "absent witness") following an initial phone call. (*Id.* at 1.) Plaintiff stated that she had provided Dr. Burks with "medical records and payment" and $2,000 as a retainer. (*Id.*) On August 3, 2015, the Court denied Plaintiff's request, finding that Plaintiff failed to show the diligence or good cause necessary to warrant a third extension. (ECF No. 78 at 3.)

On August 21, 2015, Plaintiff filed a response to the Government's motion for

summary judgment. (Opp'n, ECF No. 79.)  Plaintiff states that, as a pro se plaintiff, she "has found it impossible to produce an expert witness without representation by an attorney." (*Id.* at 2.)   Plaintiff claims that prospective witnesses have been uncommunicative and that one "even refused to decline service after examining medical records." (*Id.*)  Plaintiff also states that her older brother has agreed to serve as C.J.S.'s guardian ad litem. (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325.  "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### I.     Dismissal of C.J.S. as a Party

The Government argues that C.J.S. should be dismissed as a plaintiff because Ms. Ms. Plante, who is proceeding pro se, cannot represent her minor child without retaining a lawyer. (Mot. Summ. J. at 9, ECF No. 9.) The Government states that Plaintiff has failed to obtain legal representation for her son even though the case was filed over two years ago. (*Id.* at 10.) Plaintiff responds that her brother, Steven D. Plante, has agreed to support C.J.S.'s interests as guardian ad litem. (Opp'n at 2, 7; ECF No. 79.)

Federal Rule of Civil Procedure 17 sets forth the rules for determining a party's capacity to sue. *See* Fed. R. Civ. P. 17. In determining whether an unrepresented minor may bring a civil action, courts normally look to both Rule 17(b) and 17(c). *Johns v. County of San Diego,* 114 F.3d 874, 877-78 (9th Cir. 1997). Rule 17(b)(1) provides that a plaintiff's capacity to sue is determined by the law of the plaintiff's domicile. *See* Fed. R. Civ. P. 17. California Family Code §§ 6502 and 6601 provide that a minor, or an individual under the age of eighteen, may file a civil suit as long as the action is conducted by a guardian. *See* Cal. Fam. Code §§ 6502, 6601. However, if a minor is unrepresented, Federal Rule of Civil Procedure 17(c)(2) provides that a minor may sue by guardian ad litem or by next friend, but a court must formally appoint the guardian ad litem to protect the unrepresented minor. *See* Fed. R. Civ. P. 17; *see also Watson v. County of Santa Clara,* 468 F. Supp. 2d 1150, 1155 (N.D. Cal. 2007) (dismissing without prejudice actions brought by plaintiff minors because no guardian ad litem was formally appointed by the court).

Moreover, it is well established that even when a court formally appoints a guardian ad litem or next friend to represent a minor, the guardian ad litem must retain a lawyer, because a non-lawyer may not appear as an attorney for anyone other than himself. *See Johns,* 114 F.3d at 877.

In the instant case, the Court finds that C.J.S. lacks capacity to proceed with the instant case pursuant to Federal Rule of Civil Procedure 17. First, neither C.J.S., a minor, nor Plaintiff have sought formal appointment of a guardian ad litem or next friend by court. Plaintiff has proffered that her older brother has agreed to serve as guardian ad litem for C.J.S. (*See* Opp'n at 2, ECF No. 79). However, without formal appointment of a guardian by the Court, C.J.S. does not have the capacity to sue under Federal Rule of Civil Procedure 17. Second, even assuming that the Court were to formally appoint Plaintiff or Plaintiff's brother as guardian ad litem for C.J.S., the action cannot proceed because Plaintiff has not retained a lawyer. *Johns*, F.3d 877; *see also C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (While a non-attorney may appear pro se on his own behalf, "[h]e has no authority to appear as an attorney for others than himself."). This case has been pending over two years and, although substantial leeway is afforded to parties proceeding pro se, Plaintiff has had ample time to seek appointment of a guardian ad litem and counsel to represent the interests of C.J.S. Accordingly, because neither Ms. Plante nor anyone else has been formally appointed as guardian ad litem by a court, nor has Ms. Plante retained counsel for the present action, the Court DISMISSES the SAC without prejudice as to C.J.S.

In order to cure these deficiencies, C.J.S. must seek formal appointment of a guardian ad litem by filing a motion with the Court and secure representation by a lawyer. Until these deficiencies are properly addressed, the Court does not consider whether the Government's arguments in support of summary judgment extend to C.J.S. In any case, the Ninth Circuit has established that "[i]f an infant or incompetent person is unrepresented, the court should not enter a judgment which operates as a judgment on the merits without complying with Rule 17(c)." *Krain v. Smallwood,* 880 F.2d 1119, 1121 (9th Cir. 1989);

*Allen v. Calderon,* 408 F.3d 1150, 1153-54 (9th Cir. 2005) ("Because there was sufficient evidence of Allen's incompetence, the district court abused its discretion in dismissing the petition for failure to prosecute without first holding a competency hearing or otherwise considering his claim."). *See also United States v. 30.64 Acres of Land,* 795 F.2d 796, 805 (9th Cir. 1986) ("The absence of a guardian ad litem . . . prejudices the ability of the court to request counsel to represent [plaintiff], puts the due process rights of [plaintiff] in jeopardy in any trial that proceeds absent such representation, and effectively precludes the possibility of a binding contract of settlement because of the incompetency of one of the parties.").

## II.     Government's Motion for Summary Judgment

The Government argues it is entitled to a grant of summary judgment because the deadline to produce an expert report has passed and Plaintiff has not offered any expert testimony to prove either a breach of the standard of care or causation. (Mot. Summ. J. at 8, ECF No. 73.) Plaintiff responds that, as a pro se plaintiff, she "has found it impossible to produce an expert witness without representation by an attorney." (Opp'n at 2, ECF No. 79.) Plaintiff claims that "referred expert witnesses" have been uncommunicative and that one "even refused to decline service after examining medical records." (*Id.*) Plaintiff states that her second option was "an expert that scheduled costs to be at $12,000 or more" and that another doctor would not receive Plaintiff's calls. (*Id.* at 6.) Plaintiff notes that Plaintiffs were "scammed out of the $2000 finder's fee by the slightly interested doctor." (*Id.*) In sum, Plaintiff reiterates her arguments for why a third extension of expert-related deadlines is warranted.

In assessing the United States' liability under the FTCA, the Court is required to apply the law of the state in which the alleged tort occurred. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (citing *Trenouth v. United States*, 764 F.2d 1305, 1307 (9th Cir. 1985)). California substantive law governs this FTCA action because the alleged medical negligence occurred in San Diego. Under California law, "[t]he elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to

use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220, 229-30 (1982). A plaintiff must prove each element by a preponderance of the evidence. *Mgmt. Activities, Inc. v. United States,* 21 F. Supp. 2d 1157, 1174 (C.D. Cal. 1998); *see also Hernandez ex rel. Telles-Hernandez v. United States*, 665 F. Supp. 2d 1064, 1076 (N.D. Cal. 2009).

In the context of medical malpractice, California courts have consistently held that "medical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." *Hutchinson v. United States,* 838 F.2d 390, 392-93 (9th Cir. 1988) (citing *Landeros v. Flood*, 17 Cal. 3d 399, 408 (1976)). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." *Hernandez*, 665 F. Supp. at 1076 (N.D. Cal. 2009) (citing *Johnson v. Superior Court*, 143 Cal. App. 4th 297, 305 (2006); *see also Hutchinson,* 838 F.2d at 392; *Barris v. County of Los Angeles*, 20 Cal. 4th 101, 108 (1999), *cert. denied*, 528 U.S. 868 (1999). A plaintiff also must establish causation through expert testimony. *Jennings v. Palomar Pomerado Health Sys., Inc.*, 114 Cal. App. 4th 1108, 1118 (2003) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based [on] competent expert testimony.").

California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. *Hutchinson,* 838 F.2d at 392. The same reasoning is applicable when a defendant moves for summary judgment under Fed. R. Civ. P. 56. *See id.* at 393. The Hutchinson court explained, "[W]hen a defendant moves for summary judgment under Fed. R. Civ. P. 56 . . . [and] submits declarations which support his motion, the plaintiff cannot rest on the pleadings but must

come forward with specific facts showing there is a genuine issue for trial." *Id.; see also Haworth v. United States*, 225 F. App'x 662, 662 (9th Cir. 2007) ("The district court did not err in granting summary judgment, because the Haworths submitted nothing to rebut defense evidence from two medical experts stating there was no indication of a violation of the standard of care.").

Here, the Government timely provided its expert report from Dr. Marlene Millen, a board certified Internal Medicine physician at the University of California, San Diego, stating that she has reviewed Plaintiff's medical record from the VCC and is of the opinion that there is no evidence that Plaintiff developed methemoglobinemia from the antibiotic Dr. McKinney prescribed on November 24, 2010 and no evidence that Plaintiff had low blood volume to "warrant further work-up for a complaint of low blood volume." (Mot. Summ. J., Exh. B (Government's Expert Witness Report) at 2-3, ECF No. 73-2.) Plaintiff has not adduced any expert evidence to the contrary, yet alone any expert evidence at all.

In fact, Plaintiff has missed the operative deadline for filing expert reports despite being granted two extensions. On March 27, 2015, the Court granted Plaintiff's first request to extend the date for designation of expert witnesses from March 10, 2015 to April 10, 2015. (ECF No. 69.) On April 13, 2014, the Court granted Plaintiff's second request and extended expert-related deadlines. (ECF No. 71) On May 8, 2015, Plaintiffs designated Dr. James Alton Burks, Jr., M.D. as their expert witness "to offer his opinions regarding the standard of care, liability, causation, and damages issues in this case," including the "applicable standard of care provided by physicians and nurse-practitioners in a clinical setting." (Mot. Summ. J., Exh. A (Plaintiffs' Expert Witness Designation) at 2, ECF No. 73-2.) Plaintiff then missed the June 5, 2015 deadline for exchanging expert reports and on July 16, 2015 filed a third motion requesting extension of expert-related deadlines because her designated expert became unresponsive. (*See* ECF No. 77). On August 3, 2015, the Court denied Plaintiff's request, finding that Plaintiff failed to show the diligence or good cause necessary to warrant a third extension. (ECF No. 78 at 3, 4.) The Court noted that Plaintiff had not established that Dr. Burks ever agreed to be

Plaintiff's expert in this case and, even if he had agreed to do so, Plaintiff had not contacted him since early June 2015, leaving her six weeks to find a suitable substitute. (*Id.* at 4.)

The Court has afforded Plaintiff, a pro se litigant, leniency to compensate for her lack of legal training. However, the Court has also repeatedly cautioned Plaintiff that it is "her responsibility to maintain compliance with the Court's deadlines and to prosecute her case in a timely manner." (ECF No. 71 at 2.) Without a witness to give expert testimony on the standard of care or to prove breach of duty and causation, Plaintiff is unable to sufficiently adduce evidence that could lead a reasonable trier of fact to conclude that she has satisfied her burden of proof on her medical malpractice action. *See Hutchinson*, 838 F.2d at 393. At no point has Plaintiff provided affidavits or depositions of experts to contradict the government's evidence. She provided only her own allegations and conclusory statements that employees of VCC had been negligent and had failed to conform to the applicable standard of care. Nor has Plaintiff provided the Court with any new information indicating that Plaintiff would in the future succeed in locating a suitable expert witness. To the contrary, Plaintiff states that "[t]here has not been a single doctor who would choose to be an expert witness for a pro se plaintiff, despite the strong case," even though Plaintiff has extended her search to "outside of San Diego County, in hopes that it was just a familiarity issue." (Opp'n at 7, ECF No. 79.)

Accordingly the Court concludes that Plaintiff has failed to support her allegations, as required by Fed. R. Civ. P. 56, in the face of the Government's properly supported motion for summary judgment. *See id*. She failed to "come forth with conflicting expert evidence" showing that the Defendant's actions fell short of the prevailing standard of care in the San Diego medical community or that Defendant's actions proximately caused her injuries. *Id.* at 392-93. In light of the foregoing, the Court GRANTS the Government's motion for summary judgment as to Plaintiff Christine Plante. The Government DENIES the Government's motion for summary judgment as to Plaintiff C.J.S. in light of the Court's finding that, as a threshold matter, C.J.S. has failed to comply with the requirements of Federal Rule of Civil Procedure 17.

### III. Government's Motion to Preclude Dr. Burks from Testifying at Trial

The Government also moves to exclude Plaintiff's previously designated expert witness, Dr. Burks, from testifying at trial should Plaintiff file a late expert report in light of Plaintiff's failure to comply with the Court's expert discovery-related deadlines. (Mot. Summ. J. at 6, ECF No. 73. (citing Fed. R. Civ. P. 37(c).)  The Government argues that the sanction exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." (*Id.* (citing *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 195 F.R.D. 675, 676 (S.D. Cal 2000).)  The Government contends that plaintiff's failure in providing a timely expert report is neither substantially justified nor harmless. (*Id.*)

Having granted the Government's motion for summary judgment as to Ms. Plante, the Court need not address the Government's motion to exclude Dr. Burks from testifying at trial should he submit an untimely expert report in this case.  However, the Court notes that the Government may not repackage a Rule 37 motion for sanctions, or a motion in limine, as a Rule 56 motion for partial summary judgment.  As the Government acknowledges, motions to exclude witnesses are more appropriate as motions in limine.

### CONCLUSION AND ORDER

For the foregoing reasons, the Court:

(1) **DISMISSES** the SAC as to C.J.S. without prejudice;

(2) **GRANTS** the Government's motion for summary judgment as to Plaintiff Christine Plante; and

(3) **DENIES** the Government's motion for summary judgment as to Plaintiff C.J.S.

The hearing scheduled for October 2, 2015 is hereby **VACATED**.

Dated: October 1, 2015

Hon. Gonzalo P. Curiel
United States District Judge